IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUILA P. NUGENT, ANDREW NUGENT,<br><br>           Plaintiffs,<br><br>     v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION; WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE; and DOES 1 to 20, inclusive,<br><br>           Defendants. | 2:12-cv-00091-GEB-EFB<br><br>ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT |

         Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac") and Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage ("Wells Fargo") (collectively "Defendants") separately move under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for dismissal of all claims in the Second Amended Complaint ("SAC"). Plaintiffs Aquila P. Nugent and Andrew Nugent (collectively "Plaintiffs") allege claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, wrongful foreclosure, set aside of the trustee's sale, fraud, declaratory relief, and intentional infliction of emotional distress in connection with the foreclosure sale of Plaintiffs' home. Plaintiffs oppose each motion.

## I. LEGAL STANDARD

Decision on Defendants' Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'").

## II. JUDICIAL NOTICE

The parties submitted forty-one requests for judicial notice, including requests for judicial notice of the recorded (1) deed of trust between Aquila and Carla Nugent and Wells Fargo, (Wells Fargo Req. for Judicial Notice ("RJN"), ECF No. 33, Ex. 5); (2) grant deed whereby

2

1  Aquila and Carla Nugent granted to Andrew Nugent an undivided 50%
2  interest in the property, (RJN Ex. 6); (3) notice of default in
3  connection with the deed of trust, (RJN Ex. 7); (4) notice of trustee's
4  sale of the property, (RJN Ex. 9); (5) assignment of the deed of trust
5  to Freddie Mac, (RJN Ex. 10); (6) trustee's deed upon sale granting the
6  property to Freddie Mac, (RJN Ex. 11); and (7) grant deed whereby
7  Freddie Mac granted the property to a third party. (RJN Ex. 12.)

8        As a general rule, a district court "'may not consider any
9  material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"
10 United States v. Corinthian Colls., 655 F.3d 984, 998 (9th Cir. 2011)
11 (quoting Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001)).
12 However, judicial notice may be taken of the existence of matters of
13 public record, which are not subject to reasonable dispute over their
14 authenticity. E.g., Lee, 250 F.3d at 690; Gardner v. Am. Home Mortg.
15 Servicing, Inc., 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010). Since the
16 seven documents described here are all publicly recorded, they are
17 proper subjects for judicial notice. Accordingly, Wells Fargo's request
18 for judicial notice of these documents is granted. The remainder of the
19 parties' requests for judicial notice are denied since they "do not
20 alter . . . determination of th[is] case." Ventura Mobilehome Cmtys.
21 Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1052 n.5 (9th
22 Cir. 2004).

### III. FACTUAL ALLEGATIONS

24       The following allegations are drawn from Plaintiffs' SAC and
25 the documents of which judicial notice has been taken. In April 2004,
26 Aquila and Carla Nugent obtained a $300,000 home loan as husband and
27 wife from Wells Fargo. (RJN Ex. 5.) The loan was secured by a deed of
28 trust that encumbered the property and granted Wells Fargo the right to

3

accelerate the loan should "all or any part of the Property or any interest in the Property [be] sold or transferred . . . without [Wells Fargo's] prior written consent." (Id. ¶ 18.) In 2006, Aquila and Carla Nugent transferred an undivided 50% interest in the property to Aquila Nugent's brother, Andrew Nugent. (RJN Ex. 6.) There is no allegation in the SAC that Wells Fargo's consent was obtained prior to this transfer.

In October 2009, a notice of default was recorded in connection with the deed of trust. (RJN Ex. 7.) Around December 2009, Aquila Nugent attempted to obtain a loan modification. (SAC ¶ 11.) On January 4, 2010, a notice of trustee's sale of the property was recorded, announcing a sale date of January 25, 2010. (RJN Ex. 9.) The trustee's sale did not go forward on that date, and in February 2010, after providing Wells Fargo with financial documentation, Aquila and Carla Nugent received a letter from Wells Fargo. (SAC ¶¶ 13—15 & SAC App. ("TPP").) The letter states: "You did it! By entering into a Home Affordable Modification Trial Period Plan you have taken the first step toward making your payment more affordable." (TPP at 1.)[1] It also states: "As long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started." (Id. at 6.) According to the letter, to comply with their Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP"), Aquila and Carla Nugent had to make three TPP payments, sign and return the TPP and other required documentation, and certify that "[t]here has been no change in the

---

[1] The letter is considered because it is attached to Plaintiffs' SAC and "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c); see also Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013) (recognizing the same).

ownership of the Property since I signed the Loan Documents." (Id. at 7.) Aquila Nugent "executed the required documents," "returned the completed application to Defendant Wells Fargo," and "timely made each of the payments required by the TPP Agreement." (SAC ¶¶ 16, 25.) Andrew Nugent likewise "submitted proof of income and agreed to be a cosigner on the loan modification." (SAC ¶ 22.) However, since ownership of the property changed two years after the loan documents were signed, neither Aquila nor Andrew Nugent could truthfully certify that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents." (TPP at 7.) Yet when Plaintiffs "met with Jennie Onofre of Freddie Mac," she "concluded that Plaintiff Aquila Nugent qualified for a permanent Home Loan Modification." (SAC ¶¶ 20, 21.)

While Plaintiffs were making payments under the TPP, "[o]n May 19, 2010, un[beknownst] to Plaintiffs, a foreclosure sale was conducted and Defendant Freddie Mac acquired title to the property." (SAC ¶ 27; RJN Exs. 10, 11.)[2] Two years later, Freddie Mac sold the property to a third party. (RJN Ex. 12.)

///

---

[2] Wells Fargo argues that it notified Plaintiffs that their HAMP modification was denied, and it attaches to its Reply brief a letter dated April 29, 2010, informing Plaintiff and Carla Nugent that "we [Wells Fargo] are unable to offer you a Home Affordable Modification." (Wells Fargo Reply, Ex. A.) However, this letter is not considered since it is submitted for the first time in connection with Wells Fargo's Reply and it is not a proper subject for judicial notice. See Ojo v. Farmers Grp., Inc., 565 F.3d 1175, 1185 n.13 (9th Cir. 2009) (recognizing that a movant should not introduce new facts in its reply brief); Fed. R. Evid. 201(b) (permitting judicial notice of a fact only if it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). This private letter is not "available to the public," and accordingly, judicial notice is improper. N. Cnty. Cmty. Alliance, Inc. v. Salazar, 573 F.3d 738, 746 n.1 (9th Cir. 2009).

## IV. DISCUSSION

**A. Breach of Contract**

Plaintiffs allege Defendants breached the parties' TPP by failing to offer Plaintiffs a permanent modification and by selling the property at a trustee's sale while the TPP was in effect and Plaintiffs were performing under it. (SAC ¶¶ 37–44.) Wells Fargo seeks dismissal of Plaintiffs' breach of contract claim, arguing that the TPP did not constitute a contract, and even if it was a contract, it was validly terminated. Freddie Mac likewise argues that "Plaintiffs cannot establish the existence of a TPP" contract, and "even if there was an enforceable TPP agreement," Defendants validly terminated it since Plaintiffs were ineligible for a TPP based on the transfer of an interest in the property to Andrew Nugent. (Freddie Mac Mot. 7:19–21, 8:8.) Plaintiffs do not address Defendants' argument that the TPP was rightly terminated based on Plaintiffs' ineligibility, but instead argue generally that the HAMP TPP was an enforceable contract that required Defendants to grant Plaintiffs a permanent modification and refrain from foreclosing on Plaintiffs' property. (See SAC ¶ TBA.)

To withstand dismissal, Plaintiffs' breach of contract claim requires the existence of a contract between the parties. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (noting that the first element of a breach of contract claim is "the existence of the contract"). However courts have split on whether HAMP TPPs constitute contracts. Compare, e.g., Alimena v. Vericrest Fin., Inc., No. CIV. S-12-0901 LKK/JFM, 2012 WL 6651201, at *8 (E.D. Cal. Dec. 20, 2012) (ruling that a TPP constitutes "an enforceable agreement to grant a permanent loan modification based on the borrower's compliance with the terms therein"), and Jackson v. Ocwen Loan Servicing, LLC, No. 2:10-cv-

00711-MCE-GGH, 2011 WL 587587, at *3 (E.D. Cal. Feb. 9, 2011) (finding that for purposes of defendants' dismissal motion plaintiffs pled that "HAMP is an enforceable contract, that they had performed contractual obligations under the HAMP, and that [d]efendant subsequently refused to perform"), with Grill v. BAC Home Loans Servicing LP, CIV No. 10-CV-03057-FCD/GGH, 2011 WL 127891, at *4 (E.D. Cal. Jan. 14, 2011) (holding TPP does not constitute "a binding contract between plaintiff and [defendant] regarding a loan modification"). See generally Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n.4 (7th Cir. 2012) (noting that claims based on HAMP TPPs survive dismissal motions in federal courts about 40% of the time). This Court does not reach the question of whether a TPP constitutes an enforceable contract to grant permanent a modification and refrain from foreclosure since here there is no allegation that Plaintiffs' qualified for a HAMP TPP or permanent modification.

At the time when Plaintiffs received their HAMP TPP in February 2010, loan "[s]ervicers were not required to verify financial information prior to the effective date of the trial period [plan]." Supplemental Directive 09-01, at 17; see also Wigod, 673 F.3d at 557; Lucia v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 1059, 1069–70 (N.D. Cal. 2011). Instead, servicers could "use recent verbal financial information to prepare and offer a Trial Period Plan," and later determine whether a homeowner met "all of the eligibility criteria for the HAMP." Supplemental Directive 09-01, at 18; see also Supplemental Directive 10-01, at 1. Since Defendants could offer Plaintiffs a HAMP TPP before verifying their eligibility for HAMP, Plaintiffs' TPP did not constitute a binding agreement to permanently modify their loan. See Lucia, 798 F. Supp. 2d at 1069-70 (concluding that "at the time

[p]laintiffs were offered Trial Period modifications, there was no promise that [p]laintiffs would be found eligible for permanent loan modification" since plaintiffs' eligibility remained subject to verification). In fact, the sequencing of this process, wherein homeowners first received TPPs and then were screened for eligibility, resulted in permanent modifications for "fewer than 15 percent of the 1.4 million homeowners who had been offered trial plans" in HAMP's first year. Wigod, 673 F.3d at 557 n.2. Like many of those homeowners, Plaintiffs could not establish their documentary eligibility for HAMP. The TPP that Aquila and Carla Nugent received states that a homeowner's "representations in Section 1 [of the TPP must] continue to be true in all material respects" for a lender to be "obligated or bound." (TPP at 7–8.) Thus, to obtain a modification, Aquila and Carla Nugent had to certify and represent that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents." Id. at 7; see also Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 537 (N.D. Cal. 2012) (recognizing the same). Aquila and Carla Nugent could not make this representation since the ownership of the property changed two years after the loan documents were signed, when they transferred an undivided 50% interest in the property to Andrew Nugent. (RJN Ex. 6.) Plaintiffs are therefore ineligible for the HAMP agreement that forms the basis of their breach of contract claim. Accordingly, the breach of contract claim is dismissed.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege Defendants breached the implied covenant of good faith and fair dealing by "making inaccurate calculations and determinations of Plaintiffs' eligibility for HAMP; failing to follow through on written and implied promises; failing to follow through on

contract obligations; and failing to give permanent HAMP modifications." (SAC ¶¶ 53–56.) Wells Fargo argues that "[b]ecause Plaintiffs fail to allege the existence of a binding TPP agreement, Plaintiffs' breach of the implied covenant of good faith and fair dealing [claim] should be dismissed." (Wells Fargo Mot. 11:12–14.) Similarly, Freddie Mac argues that Plaintiffs' "claim for breach of the implied covenant of good faith and fair dealing fails for the lack of a contractual obligation." (Freddie Mac Mot. 10:12–13.) Plaintiffs rejoin that they allege in the SAC a claim for breach of the covenant of good faith and fair dealing since the TPP is a contract and the SAC "detail[s] a series of [Defendants'] actions and omissions that undermined [Plaintiffs'] ability to perform under the TPP." (Pls.' Opp'n to Freddie Mac 8:15–16.)

The covenant of good faith and fair dealing is implied by law in every California contract. Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992); see also Steiner v. Thexton, 48 Cal. 4th 411, 419 (2010). Since the covenant of good faith and fair dealing is *implied* by contract, the covenant only exists if there is a contract. Smith v. City & Cnty. of S.F., 225 Cal. App. 3d 38, 49 (1990). "There is no obligation to deal fairly or in good faith absent an existing contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992); accord Keen v. Am. Home Mortg. Servicing, Inc., 664 F. Supp. 2d 1086, 1101 (E.D. Cal. 2009). Thus to state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege both the existence of a contract and conduct that "frustrate[s the plaintiff's] right to receive the benefits of the agreement actually made." Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 349 (2000) (emphasis omitted); accord Keen, 664 F. Supp. 2d at 1101. The covenant itself "cannot impose substantive

9

1  duties or limits on the contracting parties beyond those incorporated in
2  the specific terms of their agreement." Guz, 24 Cal. 4th at 349; accord
3  Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 779 (9th Cir.
4  2003). "[I]f the [defendants'] decisions, however arbitrary, do not
5  breach such a substantive contract provision, they are not precluded by
6  the covenant." Guz, 24 Cal. 4th at 350.

7  Assuming, without deciding, that the TPP constituted an
8  enforceable contract, to state a claim based on the implied covenant of
9  good faith and fair dealing, Plaintiffs still must allege that
10 Defendants frustrated Plaintiffs' "right to receive the benefits" of the
11 TPP. Id. at 349. However, Plaintiffs cannot allege that Defendants
12 frustrated their rights under the TPP since Defendants have shown that
13 Plaintiffs were not eligible for a HAMP TPP or modification. The TPP
14 required Plaintiffs to "compl[y] with their obligations" under the TPP,
15 including representing "that there has been no change in ownership since
16 the loan documents were signed." Sarantapoulas v. Bank of Am., N.A., No.
17 C 12-0564 PJH, 2012 WL 4761900, at *5, *4 (N.D. Cal. Oct. 5, 2012); see
18 also Sutcliffe, 283 F.R.D. at 537 (recognizing that a HAMP TPP requires
19 plaintiffs "to certify . . . '[t]here has be[en] no change in the
20 ownership of the Property since I signed the Loan Documents'"). This
21 Plaintiffs could not do. Since Plaintiffs have not alleged *Defendants'*
22 breach of "a substantive contract provision," Defendants' actions
23 "however arbitrary . . . are not precluded by the covenant." Guz, 24
24 Cal. 4th at 350. Accordingly, Plaintiffs have failed to state a claim
25 for breach of the implied covenant of good faith and fair dealing, and
26 these portions of Defendants' dismissal motions are granted.
27 ///
28 ///

**C. Promissory Estoppel**

Wells Fargo seeks to dismiss Plaintiffs' promissory estoppel claim, arguing that "[e]ven if the TPP did contain the promise Plaintiffs assert, they could not have reasonably relied on it in light of the various terms and conditions spelled out in the TPP." (Wells Fargo Mot. 12:16–17.) Freddie Mac similarly submits that the TPP did not contain "a clear promise . . . because Plaintiffs knew at the time they submitted the TPP Agreement that they could not comply with [its] terms." (Freddie Mac Mot. 11:9–11.) Plaintiffs' promissory estoppel claim states that Defendants "made a representation [in the TPP] to Plaintiffs that if they returned the TPP Agreement executed and with supporting documentation, and made their TPP payments, they would receive a permanent HAMP modification." (SAC ¶ 62.) Plaintiffs also allege that Defendants foreclosed on their home without notice, while Plaintiffs were making payments under the HAMP TPP, and even though Freddie Mac's representative told Aquila Nugent he was eligible for a HAMP modification.

In California, a promise is enforceable absent consideration if the promisor should "'reasonably expect'" the promisee to rely on the promise, the promisee does rely on the promise, and "'injustice can be avoided only by enforcement of the promise.'" Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth., 23 Cal. 4th 305, 310 (2000) (quoting Restatement (Second) of Contracts § 90); accord Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 381 (9th Cir. 2003). While Plaintiffs' allegations are significant, they are insufficient to state a claim for promissory estoppel since Plaintiffs' reliance on the TPP's promise to supply a permanent modification and forestall foreclosure was neither "reasonable" nor "foreseeable" under the circumstances. Sateriale v.

R.J. Reynolds Tobacco Co., 697 F.3d 777, 792 (9th Cir. 2012). The first sentence of Andrew and Carla Nugent's TPP letter states that "[i]f I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement." (TPP at 7; Pls.' Opp'n 5:19–21 (noting the same). Yet Plaintiffs could not make the Section 1 representations required by the first sentence of their TPP. (See supra.) Given Plaintiffs' facial ineligibility for the TPP, their reliance on the TPP's promise was not "reasonable and foreseeable." Sateriale, 697 F.3d at 792. Accordingly, Plaintiffs' promissory estoppel claim is dismissed.

**D. Wrongful Foreclosure & Set Aside of Trustee's Sale**

Each Defendant also seeks dismissal of Plaintiffs' claims for wrongful foreclosure and to set aside the trustee's sale, arguing these claims are "fatally defective" because Plaintiffs failed to tender the full amount owing on the loan. (Wells Fargo Mot. 6:3; Freddie Mac Mot. 6:3.) Plaintiffs respond generally that tender was unnecessary because the TPP modified the terms of Plaintiffs' loan so that there was no default. (Pls.' Opp'n to Freddie Mac 9:11–20; Pls.' Opp'n to Wells Fargo 10:1–10.) Plaintiffs allege in the SAC that Defendants wrongfully foreclosed on the property because Defendants did not (1) own "the loan, or the corresponding note," (SAC ¶ 68); (2) have "beneficiar[y] or representative of the beneficiary" status, (SAC ¶ 69); (3) contact Plaintiffs by telephone to assess their financial situation before foreclosing, as required by Cal. Civ. Code § 2923.5(a), (SAC ¶ 71); or (4) include a declaration of compliance with this requirement, as required by Cal. Civ. Code § 2923.5(b). (Id.) Plaintiffs also allege in the SAC that they seek to set aside the trustee's sale because the deed

of trust "was improperly assigned and/or transferred" and Defendants' interest in the note and deed of trust was "never acknowledged and recorded in violation of Civil Code § 2932.5." (SAC ¶¶ 79, 78.)

To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, Plaintiffs must allege that (1) Defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) Plaintiffs suffered prejudice or harm; and (3) Plaintiffs tendered the amount of the secured indebtedness or were excused from tendering. Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112 (2011); accord Solomon v. Auroroa Loan Servs. LLC, No. 2:12-00209 WBS KJN, 2012 WL 4747151, at *5 (E.D. Cal. July 3, 2012).

"The first element [of this showing] may be satisfied by allegations that (1) the trustee or beneficiary failed to comply with the statutory procedural requirements for the notice or conduct of the sale; (2) the trustee did not have the power to foreclose; (3) the trustor was not in default, no breach had occurred, or the lender waived the breach; or (4) the deed of trust was void." West v. JPMorgan Chase Bank, N.A.,, – Cal. Rptr. 3d –, 2013 WL 1104739, at *10 (2013). Plaintiffs plead claims under the first two of these theories.

Plaintiffs allege in the SAC that Defendants failed to contact Plaintiffs by telephone to assess their financial situation before foreclosing and failed to include a notice of compliance with this obligation, as required by Cal. Civ. Code § 2923.5(a), (b). However, the recorded "trustee's deed upon sale recites that the trustee complied with the deed of trust and all applicable statutory requirements of the State of California," and "[n]o inconsistent recitals appear on the face of the trustee's deed." West, 2013 WL 1104739, at *12; RJN Ex. 11.

Therefore Plaintiffs' § 2923.5 allegations concern "only procedural irregularities in the sale notice and procedure." West, 2013 WL 1104739, at *12.

Because Plaintiffs' claims for wrongful foreclosure and set aside under Cal. Civ. Code § 2923.5 are based on irregularities in the sale notice and procedure, to prevail on these claims, Plaintiffs must offer to tender "the full amount of the debt for which the property was security," unless an exception to the tender requirement applies. Lona, 202 Cal. App. 4th at 112 (requiring plaintiffs "to do equity before the court will exercise its equitable powers" granting wrongful foreclosure or set aside of a trustee's sale); see also Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 671 (1974); Barroso v. Ocwen Loan Servicing, LLC, 208 Cal. App. 4th 1001, 1016 (2012).

California courts recognize exceptions to the tender requirement in set aside and wrongful foreclosure claims when (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred. E.g. Lona, 202 Cal. App. 4th at 112–13 (outlining the first four exceptions to the tender requirement); Pfeifer v. Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1280–81 (2012) (recognizing the fifth exception to the tender requirement). However, Plaintiffs do not allege in the SAC facts implicating these or other exceptions to the tender requirement. Since Plaintiffs do not allege that they "tendered . . . or w[ere] excused from tendering" the amount of their indebtedness, Lona, 202 Cal. App. 4th at 104, Plaintiffs' wrongful foreclosure and set aside of the trustee's sale claims based on § 2923.5

are dismissed. See Shuster v. BAC Home Loans Servicing, LP, 211 Cal. App. 4th 505, 512 (2012) (sustaining demurrer of plaintiffs' wrongful foreclosure claim based on procedural irregularities where plaintiffs' complaint alleges neither "tender" nor "facts implicating these exceptions" to the tender requirement).

Under the second theory, Plaintiffs assert that Defendants "did not have the power to foreclose," Lona, 202 Cal. App. 4th at 112, since Defendants did not own "the loan, or the corresponding note" and were not "beneficiaries or representatives of the beneficiary" under the note. (SAC ¶¶ 68, 69.) Defendants argue that the law governing non-judicial foreclosure in California is exhaustive, and "does not require production of the original note [or beneficiary status] as a basis for initiating nonjudicial foreclosure." (Wells Fargo Mot. 13:3–5; Freddie Mac Mot. 20–24.) Defendants are correct. California Civil Code Sections 2924 through 2924k establish a "comprehensive" and "exhaustive" statutory framework for nonjudical foreclosure sales. Debrunner v. Deutsche Bank Nat. Trust Co., 204 Cal. App. 4th 433, 440 (2012); I. E. Assocs. v. Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.") Nothing in this comprehensive framework for non-judicial foreclosure "precludes foreclosure when the foreclosing party does not possess the original promissory note." Debrunner, 204 Cal. App. 4th at 440. A "beneficial interest in or physical possession of the note" is unnecessary to confer "statutory authority to commence foreclosure." Shuster, 211 Cal. App. 4th at 511–12. Therefore, the foreclosing entities were not required to hold the note or be designated as beneficiaries, and these bases for Plaintiffs' wrongful foreclosure and set aside claims are dismissed.

Defendants also argue that Plaintiffs' § 2932.5 allegation is factually wrong and legally incorrect since the title records show otherwise and Cal. Civil Code § 2932.5 does not apply to deeds of trust. (Well Fargo Mot. 14:3–7; Freddie Mac Mot. 12:11–21.) Plaintiffs allege in their SAC that the note and deed of trust were "never acknowledged and recorded in violation of Civil Code § 2932.5." (SAC ¶ 78). "Section 2932.5 is inapplicable in the instant case" since this case concerns a deed of trust, not a mortgage. Herrera v. Fed. Nat'l Mortg. Ass'n, 205 Cal. App. 4th 1495, 1509 (2012); see Calvo v. HSBC Bank USA, N.A., 199 Cal. App. 4th 118, 123 (2011) ("section 2932.5 does not apply to deeds of trust"); see also Haynes v. EMC Mortg. Corp., 205 Cal. App. 4th 329, 336 (2012) (holding the same). Accordingly, Plaintiffs' claims premised on § 2932.5 are dismissed.

For the reasons stated, Defendants' dismissal motions concerning Plaintiffs' wrongful foreclosure and set aside of the trustee's sale claims are granted in full.

**E. Violation of Cal. Civ. Code § 1572**

Wells Fargo seeks dismissal of Plaintiffs' Cal. Civ. Code § 1572 claim, arguing that Plaintiffs do not "allege which of the [D]efendants made the purported misrepresentations, what they said, to whom, when, where, by what means, or what made the statement(s) false" as required by Rule 9(b). (Wells Fargo Mot. 15:4-7.) Freddie Mac echoes this argument, contending that Plaintiffs have not pled their allegations with the requisite specificity. (Freddie Mac Mot. 13:22-23). Plaintiffs allege in their SAC that Defendants are liable under § 1572 because Defendants "misrepresented to Plaintiffs that [Plaintiffs] qualified for a loan modification," "that [Defendants] intended to or were willing to enter into a loan modification," and that "[Defendants]

16

1 would not foreclose" on Plaintiffs while the modification was in effect.
2 (SAC ¶¶ 85-87.)

3 The elements of a claim for fraud under Cal. Civ. Code § 1572 are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997); see also Schroeder v. Auto Driveaway Co., 11 Cal. 3d 908, 917 (1974) (noting Cal. Civ. Code § 1572 "defin[es] fraud"). California fraud claims in federal court must satisfy Rule 9(b)'s heightened pleading requirements. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Thus a party must "'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (quoting Vess, 317 F.3d at 1106). This heightened pleading standard is further heightened when a party pleads fraud against a corporation, since allegations of fraud against a corporation generally must include "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

22 Plaintiffs have not met this heightened standard. Plaintiffs' fraud claim concerns Defendants' statements that Plaintiffs were eligible for a HAMP modification. However, Plaintiffs do not identify Defendants' misrepresentations with enough particularity to permit the reasonable inference that Plaintiffs "justifiably relied" on Defendants' statements, as is required to state a fraud claim. Alliance Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1248 (1995). Specifically, Plaintiffs

17

1  "fail[] to allege facts or offer any argument as to how [they] could
2  justifiably rely on a representation" to grant a HAMP modification that
3  they knew was contradicted by the first sentence of the TPP. See
4  Intengan v. BAC Home Loans Servicing LP, – Cal. Rptr. 3d –, 2013 WL
5  1180435 (2013). Accordingly, this portion of Defendants' dismissal
6  motion is granted.

**F. Intentional Infliction of Emotional Distress**

Defendants seek dismissal of Plaintiffs' claim for intentional infliction of emotional distress, arguing that Plaintiffs cannot establish "'outrageous' and 'extreme'" conduct "or any of the other required elements" for this claim. (Wells Fargo Mot. 15:17; Freddie Mac Mot. 14:18–19.) Plaintiffs respond that "being forcibly removed from your residence in your underwear at gunpoint without legal justification is extreme and outrageous conduct." (Pls.' Opp'n to Freddie Mac 11:24–26.) Plaintiffs allege in their SAC that "Freddie Mac caused and directed . . . the Solano County Sheriff's Department [to] remove [] Andrew Nugent from the property," (SAC ¶ 92), and that "[f]ive deputy sheriffs appeared with weapons" at the property and "detained [] Andrew Nugent and his minor children." (SAC ¶ 93.)

"A cause of action for intentional infliction of emotional distress exists when there is: '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993)); accord Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245

(9th Cir. 2013). Further, "it must also appear that the defendants' conduct was unprivileged." Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 745 (2002) (quotation omitted).

"[C]ollection of a debt by its very nature often causes the debtor to suffer emotional distress." Id.; accord Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1079 (E.D. Cal. 2007). "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." Bundren v. Superior Court, 145 Cal. App. 3d 784, 789 (1983). Although a creditor's actions are often calculated to create distress, debt collection is a privileged activity if it based on a good faith assertion of an economic interest by permissible means. Mathis v. Pac. Gas & Elec. Co., 75 F.3d 498, 505 (9th Cir. 1996); Ross, 100 Cal. App. 4th at 745 n.4; Restatement (Second) of Torts § 46 comm. g. It is only a creditor's use of "outrageous and unreasonable" means of seeking payment that is unprivileged. Ross, 100 Cal. App. 4th at 748.

Plaintiffs' allegations do not involve "outrageous and unreasonable" conduct by Freddie Mac. Id. Plaintiffs' complaint describes "a creditor/debtor situation, whereby the defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the [D]efendants threatened, insulted, abused or humiliated the [Plaintiffs]. Thus, the [Plaintiffs] cannot state a claim for intentional infliction of emotional distress." Wilson v. Hynek, 207 Cal. App. 4th 999, 1009 (2012); see also Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) ("The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim.").

Accordingly, Plaintiffs' intentional infliction of emotional distress claim is dismissed.

**G. Declaratory Relief**

Plaintiffs seek a declaration that "Defendants do not have standing or any enforceable right to enforce the note . . . so as to foreclose" on the property. (SAC 83.) Plaintiffs' declaratory relief claim is dismissed since Plaintiffs have not shown that Defendants lack "standing" or the "right . . . to foreclose" on the property. See supra (dismissing each of Plaintiffs' claims).

## V. CONCLUSION

For the reasons stated, all of Plaintiffs' claims are dismissed. Plaintiffs are granted fifteen (15) days leave from the date on which this Order is filed to file an amended complaint amending the dismissed claims.

Dated: March 28, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge