1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    AQUILA P. NUGENT, ET AL.,                    No.  2:12-CV-0091-TLN-EFB

12              Plaintiffs,

13         v.                                       **ORDER GRANTING DEFENDANTS'
                                                    MOTION TO DISMISS**
14    FEDERAL HOME LOAN CORP., ET
      AL.,
15
                Defendants.
16

17

18         This matter is before the Court pursuant to Defendants Wells Fargo Bank, N.A. ("Wells

19    Fargo") and Federal Home Loan Mortgage Corporation's ("Freddie Mac") (collectively referred

20    to as "Defendants") motion to dismiss Plaintiffs Aquila P. Nugent ("Plaintiff") and Andrew

21    Nugent's ("Co-Plaintiff") (collectively referred to as "Plaintiffs") Third Amended Complaint

22    ("TAC").  (*See* ECF No. 61.)  Plaintiffs have filed an opposition.  (*See* ECF No. 63.)  The Court

23    has carefully considered the arguments raised by both parties and for the reasons stated below

24    hereby GRANTS Defendants' motion to dismiss.[1]

---

[1]    In support of Defendants' motion to dismiss, Defendants have requested that this Court take judicial notice
of numerous documents including: (1) deed of trust between Aquila and Carla Nugent and Wells Fargo, (Req. for
Judicial Notice ("RJN"), ECF No. 62-1, Ex. 1); (2) grant deed whereby Aquila and Carla Nugent granted to Andrew
Nugent an undivided 50% interest in the property (ECF No. 62-1, Ex. 2); (3) notice of default in connection with the
deed of trust (ECF No. 62-1, Ex. 3); (4) substitution of trustee (ECF No. 62-1, Ex. 4); (5) notice of trustee's sale of
the property (ECF No. 62-1, Ex. 5); (6) assignment of the deed of trust to Freddie Mac (ECF No. 62-1, Ex. 6); (7)
trustee's deed upon sale granting the property to Freddie Mac (ECF No. 62-1, Ex. 7); and (8) grant deed whereby

1

1    **I.    FACTUAL BACKGROUND[2]**

2        In April 2004, Plaintiff and his wife Carla Nugent obtained a $300,000 home loan from

3    Wells Fargo.  (ECF No. 62-1, Ex. 1.)  The loan was secured by a deed of trust that encumbered

4    the property and granted Wells Fargo the right to accelerate the loan should "all or any part of the

5    Property or any interest in the Property [be] sold or transferred . . . without [Wells Fargo's] prior

6    written consent."  (ECF No. 62-1, Ex. 1 at ¶ 18.)  In 2006, Plaintiff and Carla Nugent transferred

7    an undivided 50% interest in the property to Plaintiff's brother, Co-Plaintiff.  (ECF No. 62-1, Ex.

8    2.)  The TAC is silent as to whether Wells Fargo's consent was obtained prior to this transfer.

9        In October 2009, a notice of default was recorded in connection with the deed of trust.

10   (ECF No. 62-1, Ex. 3.)  Around December 2009, Plaintiff attempted to obtain a loan

11   modification.  On January 4, 2010, a notice of trustee's sale of the property was recorded,

12   announcing a sale of the property on January 25, 2010.  (ECF No. 62-1, Ex. 5.)  The trustee's sale

13   did not go forward on that date, and in February 2010, after providing Wells Fargo with financial

14   documentation, Plaintiff and his wife received a letter from Wells Fargo.  (TAC, ECF No. 59 at

15   ¶¶ 41–42, Ex. A.)[3]  The letter states: "You did it! By entering into a Home Affordable

16   Modification Trial Period Plan you have taken the first step toward making your payment more

17   affordable."  (ECF No. 59 at 30.)  It also states: "As long as you comply with the terms of the

18   Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if

19   foreclosure proceedings have started."  (ECF No. 59 at 35.)  The letter states that to comply with

20   their Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP"), Plaintiff and

21

22   Freddie Mac granted the property to a third party (ECF No. 62-1, Ex. 8).  Defendants have also submitted copies of
     Plaintiff's bankruptcy filings.  (*See* ECF No. 62-1, Ex. 9–15.)

23       "As a general rule, a district court may not consider materials not originally included in the pleadings in
     deciding a Rule 12 motion ... it may take judicial notice of matters of public record and may consider them without

24   converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land*, 547 F.3d 943,
     955 (9th Cir. 2008) (internal quotations omitted).  The documents submitted by Defendants are publically recorded
     documents of which judicial notice may properly be taken, and accordingly, those documents may be considered in

25   deciding Defendants' dismissal motion.

26   [2]      The majority of the following allegations are drawn from Plaintiffs' TAC.  (*See* ECF No. 59.)  However,
     where the dates provided within the TAC contradict with judicially noticed documents, the Court cites to the
     applicable noticed document.

27   [3]      The TPP letter is attached to Plaintiffs' TAC and is thus treated as part of the pleadings.  *See* R. Civ. P.
     10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *see*

28   *also Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (recognizing the same).

1   his wife had to make three TPP payments, sign and return the TPP and other required

2   documentation, and certify that "[t]here has been no change in the ownership of the Property

3   since I signed the Loan Documents."  (ECF No. 59 at 36.)  Plaintiff alleges that he "executed the

4   required documents," "returned the completed application to Defendant Wells Fargo," and

5   "timely made each of the payments required by the TPP Agreement."  (ECF No. 59 at ¶¶ 43, 52.)

6   Andrew Nugent also "submitted proof of income and agreed to be a cosigner on the loan

7   modification."  (ECF No. 59 at ¶ 48.)  Plaintiffs allege that "despite their compliance in all

8   respects with the terms of the TPP Agreement, the Defendants have not honored either the

9   temporary or the permanent Loan Modification Agreements under the HAMP Program guidelines

10  to date."[4]  (ECF No. 59 at ¶ 53.)  Plaintiffs allege that on May 19, 2010, a foreclosure sale was

11  conducted and Freddie Mac acquired title to the property without their knowledge.  (ECF No. 59

12  at ¶ 54.)  Freddie Mac thereafter filed an unlawful detainer complaint against Plaintiffs and

13  obtained a judgment on August 24, 2010.[5]  (ECF No. 59 at ¶ 55.)  Freddie Mac thereafter evicted

14  Plaintiffs.  (ECF No. 59 at ¶ 62.)  Plaintiffs filed a complaint on July 29, 2011 in Solano County

15  Superior Court alleging wrongful foreclosure and other causes of action.  (ECF No. 59 at ¶ 63.)

16  Freddie Mac removed this case from Solano County Superior Court to federal court on January

17  12, 2012.  (ECF No. 59 at ¶ 65.)  On March 28, 2012, Freddie Mac granted the property to a third

18  party.  (ECF No. 62-1, Ex. 8.)

19       The instant complaint alleges the following causes of action: Count One, Breach of

20  Contract; Count Two, Breach of Implied Covenant of Good Faith and Fair Dealing; Count Three,

21  Promissory Estoppel; Count Four, Wrongful Foreclosure; Count Five, To Set Aside Trustee's

22  Sale; Count Six, Declaratory Relief; Count Seven, Violations of Civil Code § 1572; Count Eight,

23  Intentional and/or Negligent Infliction of Emotional Distress; Count Nine, Negligence; and Count

24  Ten, Unfair Competition in Violation of California Business & Professional Code § 17200 et seq.

[4]  The Court notes, as did Judge Garland Burrell when he dismissed Plaintiffs' Second Amended Complaint, that since ownership of the property changed two years after the loan documents were signed, neither Plaintiff, his wife, or Co-Plaintiff could truthfully certify that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents."
[5]  Plaintiff Andrew Nugent filed for Chapter 13 relief in the U.S. Bankruptcy Court for the Eastern District of California on September 8, 2010.  (*See* ECF No. 59 at ¶ 58.)  The bankruptcy case was closed on November 10, 2011.  (ECF No. 59 at ¶ 59.)

3

1    (*See* ECF No. 59.)   Defendants have moved this Court to dismiss all counts with prejudice.

2         **II.      LEGAL STANDARD**

3              Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and

4    plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*,

5    556 U.S. 662, 678–79 (2009).   Under notice pleading in federal court, the complaint must "give

6    the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell*

7    *Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).   "This simplified

8    notice pleading standard relies on liberal discovery rules and summary judgment motions to

9    define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema*

10   *N.A.*, 534 U.S. 506, 512 (2002).

11             On a motion to dismiss, the factual allegations of the complaint must be accepted

12   as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).   A court is bound to give plaintiff the benefit of

13   every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.

14   *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).   A plaintiff need not

15   allege "'specific facts' beyond those necessary to state his claim and the grounds showing

16   entitlement to relief." *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the

17   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

18   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

19   544, 556 (2007)).

20             Nevertheless, a court "need not assume the truth of legal conclusions cast in the

21   form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th

22   Cir. 1986).   While Rule 8(a) does not require detailed factual allegations, "it demands more than

23   an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.   A

24   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

25   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

26   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

27   statements, do not suffice.").   Moreover, it is inappropriate to assume that the plaintiff "can prove

28   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

4

1    been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

2    459 U.S. 519, 526 (1983).

3            Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged

4    "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697

5    (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her]

6    claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.

7    *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands

8    more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This

9    plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its

10   judicial experience and common sense." *Id.* at 679.

11           If a complaint fails to state a plausible claim, "'[a] district court should grant leave

12   to amend even if no request to amend the pleading was made, unless it determines that the

13   pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d

14   1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir.

15   1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of

16   discretion in denying leave to amend when amendment would be futile).  Although a district court

17   should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

18   discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended

19   its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

20   2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

21           **III.    ANALYSIS**

22           The Court addresses each of Plaintiffs' claims separately below.

23           A.    Count One: Breach of Contract

24           Plaintiffs allege that Defendants breached the TPP Agreement in two ways: first, by

25   foreclosing without notice; and second, by failing to provide them with a permanent loan

26   modification.  (ECF No. 59 at ¶¶ 80–81.)  As to Plaintiffs' claim that they were foreclosed on

27   without notice, it is unclear as to whether Plaintiffs, in fact, argue that they never received any

28   notice or whether Plaintiffs believed that the TPP stopped the foreclosure procedure that was

1    already in place.  Either way, the Court finds that this argument fails.[6]

2    Before a mortgagee may foreclose on a property after a breach of the obligation for which

3    that property is a security, the mortgagee or any of its authorized agents must file a notice of

4    default in the office of the recorder of each county wherein the mortgaged or trust property or

5    some part or parcel thereof is situated.  Cal. Civ. Code § 2924(a)(1) (West).  Furthermore, the

6    mortgagee may not transfer or sell the mortgaged property prior to a period of three months

7    elapsing from the filing of the notice of default.  Cal. Civ. Code § 2924(2) (West).  However, the

8    mortgagee may record a notice of sale "up to five days before the lapse of the three-month period

9    provided that the date of sale is no earlier than three months and twenty days after the recording

10   of the notice of default."  Cal. Civ. Code § 2924(4) (West).

11   As referenced above,[7] the Court took judicial notice of the notice of default filed by

12   Defendants in connection with the deed of trust, the substitution of trustee, and the notice of

13   trustee's sale.  (*See* ECF No. 62-1, Exs. 3, 4, and 5.)  The notice of default was recorded in Solano

14   County on October 1, 2009.  On December 15, 2009, a substitution of trustee was filed

15   substituting Cal-Western Reconveyance Corporation ("Cal-Western") as the trustee.  (*See* ECF

16   No. 62-1, Ex. 4.)  On January 4, 2010, the trustee filed a notice of trustee's sale of the property

17   purporting to sell the property on January 25, 2010.  (*See* ECF No. 62-1, Ex. 5.)  The sale was

18   postponed and eventually took place on May 19, 2010, resulting in Freddie Mac acquiring title to

19   the policy.  (*See* Filing of Trustee's Deed Upon Sale in Solano Cnty., ECF No. 62-1, Ex. 7.)  On

20   April 4, 2012, a grant deed was filed in Solano County granting the property to a third party.  (*See*

21   Grant Deed, ECF No. 62-1, Ex. 8.)

22   If it is Plaintiffs' contention that they were not given notice of the rescheduled sale, as

23   required by California Civil Code § 2924(5), there is no remedy for Plaintiffs' claim:

24   
25   
26

> Where foreclosure sale has already occurred . . . [a] violation does not affect the title: "There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale. Under

---

[6]    Although not specifically stated by Plaintiffs, the Court assumes that Plaintiffs' notice claims are predicated
27   on California's Homeowner Bill of Rights, codified in Civil Code §§ 2920.5, 2923.4, 2923.5, 2923.55, 2923.6,
2923.7, 2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17, 2924.18, and 2924.19.
28   [7]    *See* Footnote One (granting Defendants' request for judicial notice).

6

1

2

3

> the plain language of section 2923.5, read in conjunction with
> section 2924g, the only remedy provided is a postponement of the
> sale before it happens." As the Canterbury property was already
> sold at foreclosure, it does not appear that any remedy remains
> under the provision.

4

5

6

7

8

9

10

*Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877–78 (N.D. Cal. 2010) (quoting

*Mabry v. Superior Ct.*, 185 Cal. App. 4th 208, 235 (2010); *see also Roberts v. J.P. Morgan Chase

Bank*, Nos. 09–CV–01855–LHK, 09–CV–01879, 2011 WL 864949, at *5 (N.D. Cal. Mar. 11,

2011) ("[T]he remedy for a § 2923.5 violation is limited to postponement of the foreclosure sale

to allow compliance. Section 2923.5 does not create a right to a loan modification, nor does it

have any effect on a completed foreclosure sale.").[8] Thus, the wrongful foreclosure cause of

action on this theory is DISMISSED WITH PREJUDICE.

11

12

13

14

15

16

As to Plaintiffs' claim that Defendants breached the contract by not modifying the loan

agreement, the Court finds that this argument also fails. Much of the briefing submitted to this

Court by both Plaintiffs and Defendants discusses whether the TPP is in fact a contract and

whether Defendants in fact had a duty to offer modification to Plaintiffs. As the Court has

previously addressed, because Plaintiffs could not comply with the terms of the TPP, the TPP did

not create a contract:

17

18

19

20

21

22

23

24

> At the time when Plaintiffs received their HAMP TPP in February
> 2010, loan "[s]ervicers were not required to verify financial
> information prior to the effective date of the trial period [plan]."
> Supplemental Directive 09-01, at 17; *see also Wigod v. Wells Fargo
> Bank, N.A.*, 673 F.3d 547, 557 (7th Cir. 2012); *Lucia v. Wells
> Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1069–70 (N.D. Cal.
> 2011). Instead, servicers could "use recent verbal financial
> information to prepare and offer a Trial Period Plan," and later
> determine whether a homeowner met "all of the eligibility criteria
> for the HAMP." Supplemental Directive 09-01, at 18; *see also*
> Supplemental Directive 10-01, at 1. Since Defendants could offer
> Plaintiffs a HAMP TPP before verifying their eligibility for HAMP,
> Plaintiffs' TPP did not constitute a binding agreement to
> permanently modify their loan. *See Lucia*, 798 F. Supp. 2d at

25

26

27

28

---

[8]     The courts' holdings in *Mabry* and *Roberts v. J.P. Morgan Chase Bank* have been superseded by statute. *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1153 (N.D. Cal. 2013) ("Prior to the passage of the [California's Homeowner's Bill of Rights] courts held that the remedy for a § 2923.5 violation is limited to postponement of the foreclosure sale to allow compliance. Section 2923.5 does not create a right to a loan modification, nor does it have any effect on a completed foreclosure sale.") However, the California Homeowner's Bill of Rights ("HBOR") is not retroactive and thus does not apply to documents executed prior to January 1, 2013. *Rockridge Trust*, 985 F. Supp. 2d at 1153. Accordingly, the HBOR does not affect the outcome of this case.

1069–70 (concluding that "at the time    [p]laintiffs were offered Trial Period modifications, there was no promise that [p]laintiffs would be found eligible for permanent loan modification" since plaintiffs' eligibility remained subject to verification).  In fact, the sequencing of this process, wherein homeowners first received TPPs and then were screened for eligibility, resulted in permanent modifications for "fewer than 15 percent of the 1.4 million homeowners who had been offered trial plans" in HAMP's first year.  *Wigod*, 673 F.3d at 557 n.2.  Like many of those homeowners, Plaintiffs could not establish their documentary eligibility for HAMP.  The TPP that Aquila and Carla Nugent received states that a homeowner's "representations in Section 1 [of the TPP must] continue to be true in all material respects" for a lender to be "obligated or bound." (TPP at 7–8.)  Thus, to obtain a modification, Aquila and Carla Nugent had to certify and represent that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents." *Id.* at 7; *see also Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 537 (N.D. Cal. 2012) (recognizing the same).  **Aquila and Carla Nugent could not make this representation since the ownership of the property changed two years after the loan documents were signed, when they transferred an undivided 50% interest in the property to Andrew Nugent. (RJN Ex. 6.) Plaintiffs are therefore ineligible for the HAMP agreement that forms the basis of their breach of contract claim**.[9]

---

[9]    The Court's previous order cites to *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059 (N.D. Cal. 2011) which has since been overruled by the Ninth Circuit's decision in *Corvello v. Wells Fargo, N.A.*, 728 F.3d 878 (9th Cir. 2013).  In *Corvello*, the Ninth Circuit joined the Seventh Circuit in holding:

> Wells Fargo's interpretation of the TPP was suspect because it allowed banks to avoid their obligations to borrowers merely by choosing not to send a signed Modification Agreement, even though the borrowers made both accurate representations and the required payments.  As the Seventh Circuit put it, Wells Fargo's interpretation would allow it to "simply refuse to send the Modification Agreement for any reason whatsoever—interest rates went up, the economy soured, it just didn't like [the Borrower]—and there would still be no breach ... turn[ing] an otherwise straightforward offer into an illusion." . . .  The more natural and fair interpretation of the TPP is that the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain. Under Paragraph 2G of the TPP, there could be no actual mortgage modification until all the requirements were met, but the servicer could not unilaterally and without justification refuse to send the offer.  As the Seventh Circuit stated in *Wigod*, the modification was not complete until all of the conditions were met, "but under paragraph 1 and section 3 of the TPP, Wells Fargo still had an obligation to offer [the borrower] a permanent modification once [the borrower] satisfied all [ ] obligations under the agreement." *Id.* (emphasis in original). This interpretation of the TPP avoids the injustice that would result were Wells Fargo's position accepted and thus allowed to keep borrowers' trial payments without fulfilling any obligations in return.

*Id.* at 883–84 (citing to *Wigod*, 673 F.3d at 563).  *Corvello* does not change this Court's determination of the matter at hand because this Court's determination that Plaintiffs could not qualify for the TPP is based on the fact that the TPP required Aquila and Carla Nugent to certify and represent that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents," and  Aquila and Carla Nugent could not make this representation.

1    (ECF No. 53 at 7–8.)  Plaintiffs have failed to cure this deficiency, and the Court finds that

2    Plaintiffs would be unable to do so in any event. Accordingly, Plaintiffs' claim for breach of

3    contract is DISMISSED WITH PREJUDICE.

4               B.        Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

5          Defendants assert that Plaintiffs cannot establish their claim that Defendants breached the

6    implied covenant of good faith and fair dealing because Plaintiffs have failed to establish the

7    existence of a contractual obligation.  (ECF No. 61-4 at 21.)  This Court agrees.  "'To establish a

8    breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the

9    existence of a contractual obligation, along with conduct that frustrates the other party's rights to

10   benefit from the contract.'"  *Grill v. BAC Home Loans Servicing LP*, No. 10–CV–03057–

11   FCD/GGH, 2011 WL 127891, at \*5 (E.D. Cal. Jan. 14, 2011) (quoting *Fortaleza v. PNC Fin.*

12   *Servs. Group, Inc.*, 642 F. Supp. 2d 1012, 1021–22 (N.D. Cal. 2009).  "The 'implied covenant of

13   good faith and fair dealing is limited to assuring compliance with the express terms of the

14   contract, and cannot be extended to create obligations not contemplated by the contract.'"  *Id.*

15   (quoting *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093–94 (2004)).

16   Therefore, because Plaintiffs cannot allege the existence of a contract, this claim must also be

17   DISMISSED WITH PREJUDICE.

18               C.        Count Three: Promissory Estoppel

19         For Plaintiffs to state their third cause of action, for promissory estoppel, they must allege

20   "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise

21   is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the

22   estoppel must be injured by his reliance."  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d

23   885, 890 (1976) (citing *Thomson v. Internat. Alliance of Stage Employes*, 232 Cal. App. 2d 446,

24   454 (1965)).  Defendants contend that Plaintiffs cannot establish the first requirement: a promise

25   clear and unambiguous in its terms.  (ECF No. 61-1 at 21.)  Plaintiffs again contend that the TPP

26   included a clear promise to modify.  (ECF No. 63 at 10–11.)

27   In contrast, the court in *Lucia* determined that the TPP did not create a contract merely because defendants never sent
     a signed modification to plaintiffs, even though plaintiffs had submitted the requisite paperwork and allegedly
28   qualified for a modification.  Accordingly, *Corvello*'s treatment of *Lucia* does not affect this Court's determination.

9

1      The Court has already found that Plaintiffs have failed to establish a binding agreement.[10]

2    Moreover, Plaintiffs' contention is contradicted by their own admission that the TPP included the

3    following language: "I understand that after I sign and return two copies of this Plan to the

4    Lender, the Lender will send me a signed copy of the Plan if I qualify for the Offer or will send

5    me written notice that I do not qualify for the offer."  (ECF No. 63 at 7–8; *see also* TAC, ECF

6    No. 59 at 32 ("You *may* qualify for a Home Affordable Modification Plan . . . *if you qualify under*

7    *the federal government's Home Affordable Modification program*  and comply with the terms of

8    the Trial Period Plan, we will modify your loan.") (emphasis added).)

9      Furthermore, as this Court found in its previous order dismissing Plaintiffs' Second

10   Amended Complaint, even if Plaintiffs were to establish a clear promise, Plaintiffs cannot satisfy

11   the third requirement because their reliance on the TPP is unreasonable.  *See Kajima/Ray Wilson*

12   *v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (holding that in California a

13   promise is enforceable absent consideration if the promisor should reasonably expect the

14   promisee to rely on the promise, the promisee does rely on the promise, and injustice can be

15   avoided only by enforcement of the promise) (internal quotations omitted).   The first sentence of

16   Andrew and Carla Nugent's TPP letter states that "[i]f I am in compliance with this Loan Trial

17   Period and my representations in Section 1 continue to be true in all material respects, then the

18   Lender will provide me with a Loan Modification Agreement."  (ECF No. 59 at 36.)  Plaintiffs

19   could not make representations required by the first sentence of their TPP because Section 1

20   required that no change in the ownership of the property had occurred prior to signing the Loan

21   Documents.  It is undisputed that Plaintiffs could not meet this requirement, and thus, any

22   reliance alleged by Plaintiffs is not reasonable.  As such, the Court finds that Plaintiffs'

23   promissory estoppel claim must be DISMISSED WITH PREJUDICE.

24      D.      Counts Four and Five: Wrongful Foreclosure/To Set Aside Trustees Sale

25      Plaintiffs seek to invalidate the foreclosure based on numerous legal theories many of

26   which are based on the premise that Defendants did not legally have an interest in the property,

27   and thus, the foreclosure is void.  The legal theories posed by Plaintiffs include: (1) that

28   _____

      10      *See infra* Sections III: A and B.

1    foreclosing defendants did not own "the loan, or the corresponding note"; (2) foreclosing

2    defendants did not have beneficiary or representative of the beneficiary status; (3) foreclosing

3    defendants did not contact Plaintiffs by telephone to assess their financial situation before

4    foreclosing, as required by Cal. Civ. Code § 2923.5(a); and (4) foreclosing defendants did not

5    include a declaration of compliance with this requirement, as required by Cal. Civ. Code §

6    2923.5(b).  (ECF No. 59 at ¶¶ 122–25.)   Plaintiffs seek in Count Five to set aside the trustee's

7    sale pursuant to the alleged violations.  (ECF No. 59 at ¶¶ 134–36.)

8         To obtain an equitable set aside of a trustee's sale or maintain a wrongful foreclosure

9    claim, Plaintiffs must allege that (1) Defendants caused an illegal, fraudulent, or willfully

10   oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2)

11   Plaintiffs suffered prejudice or harm; and (3) Plaintiffs tendered the amount of the secured

12   indebtedness or were excused from tendering.  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104

13   (2011); *accord Solomon v. Auroroa Loan Servs. LLC*, No. 2:12-00209 WBS KJN, 2012 WL

14   4747151, at *5 (E.D. Cal. Oct. 3, 2012).  "The first element may be satisfied by allegations that

15   (1) the trustee or beneficiary failed to comply with the statutory procedural requirements for the

16   notice or conduct of the sale; (2) the trustee did not have the power to foreclose; (3) the trustor

17   was not in default, no breach had occurred, or the lender waived the breach; or (4) the deed of

18   trust was void."  *West v. JPMorgan Chase Bank, N.A*, 214 Cal. App. 4th 780, 800 (2013).

19        Plaintiffs' arguments basically fall within the first two types of allegations.  Thus, the

20   Court addresses these two theories separately.  As to Plaintiffs' statutory arguments,  Plaintiffs

21   allege in the TAC that Defendants failed to contact Plaintiffs by telephone to assess their financial

22   situation before foreclosing and failed to include a notice of compliance with this obligation, as

23   required by Cal. Civ. Code § 2923.5(a), (b).  However, the recorded trustee's deed upon sale

24   recites that the trustee complied with the deed of trust and all applicable statutory requirements of

25   the State of California, and no inconsistent recitals appear on the face of the trustee's deed.  Thus,

26   Plaintiffs' § 2923.5 allegations concern procedural irregularities in the sale notice and procedure.

27   "An allegation of tender of the indebtedness is necessary when the person seeking to set aside the

28   foreclosure sale asserts the sale is voidable due to irregularities in the sale notice or procedure."

1    *West*, 214 Cal. App. 4th at 801 (citing *Lona*, 202 Cal. App. 4th at 112).  Plaintiffs were informed

2    of this requirement when the Court dismissed their Second Cause of Action.  (*See* Order, ECF

3    No. 53 at 13–14.)  Yet, Plaintiffs have failed to cure this deficiency.  Accordingly, Plaintiffs

4    cannot succeed under this theory.

5            As to Plaintiffs' allegations concerning Defendants' ability to foreclose, this Court has

6    taken judicial notice of the following documents: notice of default in connection with the deed of

7    trust (ECF No. 62-1, Ex. 3); the substitution of trustee (ECF No. 62-1, Ex. 4); notice of trustee's

8    sale of the property (ECF No. 62-1, Ex. 5); assignment of the deed of trust to Freddie Mac (ECF

9    No. 62-1, Ex. 6); trustee's deed upon sale granting the property to Freddie Mac (ECF No. 62-1,

10   Ex. 7); and the grant deed whereby Freddie Mac granted the property to a third party (ECF No.

11   62-1, Ex. 8).  These documents contradict Plaintiffs' allegations and Plaintiffs have not alleged

12   any facts that support their theories.  Moreover, even if Defendants did not possess the note, that

13   would not preclude foreclosure.  The law governing nonjudicial foreclosure in California is

14   exhaustive and does not require production of the original note [or beneficiary status] as a basis

15   for initiating nonjudicial foreclosure.  Cal. Civ. Code §§ 2924–2924k; *Debrunner v. Deutsche*

16   *Bank Nat. Trust Co.*, 204 Cal. App. 4th 433, 440 (2012); *I. E. Assocs. v. Safeco Title Ins. Co.*, 39

17   Cal. 3d 281, 285 (1985) ("These provisions cover every aspect of exercise of the power of sale

18   contained in a deed of trust.").  Nothing in this comprehensive framework for nonjudicial

19   foreclosure "precludes foreclosure when the foreclosing party does not possess the original

20   promissory note." *Debrunner*, 204 Cal. App. 4th at 440.  A "beneficial interest in or physical

21   possession of the note" is unnecessary to confer "statutory authority to commence foreclosure."

22   *Shuster v. BAC Home Loans Servicing, LP*, 211 Cal. App. 4th 505, 511–12 (2012).

23           Finally, the TAC contains assertions that after the origination and funding of the loan, it

24   was sold to investors as a "mortgage backed security" and Defendants did not own the loan, or

25   the corresponding note.  (ECF No. 59 at ¶ 122.)  This argument is also a nonstarter.  Numerous

26   courts have held that securitization of a loan does not divest a lender of its interest.  *See Patel v.*

27   *Mortgage Elec. Registration Sys., Inc.*, No. 4:13-CV-1874 KAW, 2013 WL 4029277, at *4 (N.D.

28   Cal. Aug. 6, 2013) (finding that the transfer of the Note and the beneficial interest through the

1    securitization process does not constitute a sale of the Property, and therefore, there is no

2    requirement that it be recorded); *McGough v. Wells Fargo Bank, N.A.*, No. C12–0050 TEH, 2012

3    WL 2277931, at *4 (N.D. Cal. June 18, 2012) ("Theories that securitization undermines the

4    lender's right to foreclose on a property have been rejected by the courts."); *Sami v. Wells Fargo*

5    *Bank, et al.*, No. 12–00108, 2012 WL 967051 at *4–*6 (N.D. Cal. Mar. 21, 2012) (rejecting

6    arguments that securitization invalidates standing to foreclose and finding borrower has no

7    standing to challenge violations of the terms of a Pooling and Service Agreement ("PSA") as

8    improper securitization); *Wadhwa v. Aurora Loan Servs., LLC*, No. 11–1784, 2011 WL 2681483

9    at *4 (E.D. Cal. July 8, 2011) (rejecting the argument that securitization and assignment of the

10   note to a REMIC invalidates interests other than the borrower's); *Hafiz v. Greenpoint Mortgage*

11   *Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (rejecting argument that defendants'

12   power of sale is lost by assignment of original promissory note to a trust pool); *Benham v. Aurora*

13   *Loan Servs.*, No. 09–2059, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (rejecting same

14   argument regarding trust pool); *Reyes v. GMAC Mortgage LLC*, No. 11–0100, 2011 WL

15   1322775, at *2 (D. Nev. Apr. 5, 2011) ("[S]ecuritization of a loan does not in fact alter or affect

16   the legal beneficiary's standing to enforce the deed of trust."); *see also Lane v. Vitek Real Estate*

17   *Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (noting that "[t]here is no stated

18   requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in

19   the Note to foreclose.  Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any

20   of their agents to initiate non-judicial foreclosure").  Accordingly, Plaintiffs cannot state a claim

21   for wrongful foreclosure or to set aside the trustee's sale, and Counts Four and Five are

22   DISMISSED WITH PREJUDICE.

23          F.      Count Six: Declaratory Relief

24          Plaintiffs request that this Court grant declaratory relief alleging that Defendants "do not

25   have standing or any enforceable right to enforce the note and any incidental rights to collateral

26   so as to foreclose on Plaintiffs, including without, limitation, conducting a trustee's sale relative

27   to that property."  (ECF No. 59 at ¶ 139.)  Declaratory relief requires "an actual, present

28   controversy over a proper subject." *Californians for Native Salmon and Steelhead Ass'n v.*

1   *Department of Forestry*, 221 Cal. App. 3d 1419, 1427 (1990); Code Civ. Proc. § 1060.  Where

2   only (alleged) past wrongs are involved, declaratory relief is not appropriate.  *Baldwin v. Marina*

3   *City Properties, Inc.*, 79 Cal. App. 3d 393, 407–08 (1978); *Cardellini v. Casey*, 181 Cal. App. 3d

4   389, 396–97 (1986).  Defendants argue that Plaintiffs' claim for declaratory relief is moot

5   because Plaintiffs' home has already been foreclosed on.  (ECF No. 61-1 at 14–15.)

6          The Court agrees and Plaintiffs do not dispute that declaratory relief is unavailable in this

7   instance.  In fact, in their opposition, Plaintiffs state: "[s]ince the Defendants surreptitiously

8   foreclosed on Plaintiffs, Declaratory Relief is unavailable."  (ECF No. 63 at 12.)  Accordingly,

9   Plaintiffs' sixth cause of action for declaratory relief is DISMISSED WITH PREJUDICE.

10         G.      Count Seven: Violation of Civil Code § 1572

11         The elements of a claim for fraud under California Civil Code § 1572 are (1)

12  misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance,

13  and (5) resulting damage.  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997);

14  *see also Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 917 (1974) (noting Cal. Civ. Code §

15  1572 "defin[es] fraud").  California fraud claims in federal court must satisfy Rule 9(b)'s

16  heightened pleading requirements.  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th

17  Cir. 2003).  Thus a party must "'state with particularity the circumstances constituting fraud or

18  mistake,' including 'the who, what, when, where, and how of the misconduct charged.'"  *Ebeid ex*

19  *rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess*, 317 F.3d at

20  1106).  This heightened pleading standard is further heightened when a party pleads fraud against

21  a corporation, since allegations of fraud against a corporation generally must include "the names

22  of the persons who made the allegedly fraudulent representations, their authority to speak, to

23  whom they spoke, what they said or wrote, and when it was said or written."  *Tarmann v. State*

24  *Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

25         In this Court's previous order, it found that Plaintiffs did not meet the heightened pleading

26  standard.  (ECF No. 53 at 17.)  Specifically, Plaintiffs fail to allege facts or offer any argument as

27  to how they could justifiably rely on a representation to grant a HAMP modification that they

28  knew was contradicted by the first sentence of the TPP.  *See Cicone v. URS Corp.*, 183 Cal. App.

14

1    3d 194, 205 (1986) ("The issue [of justifiable reliance] is whether the person who claims reliance

2    was justified in relying on the representation in light of his own knowledge and experience.").

3    Because Plaintiffs have continually failed to cure this deficiency, this cause of action is

4    DISMISSED WITH PREJUDICE.

5           H.      Count Eight: Intentional/Negligent Infliction of Emotional Distress

6           Plaintiffs' eighth cause of action appears to be directed only at Freddie Mac, not Wells

7    Fargo.  Regardless, Defendants have moved this Court to dismiss Plaintiffs' intentional infliction

8    of emotional distress ("IIED") cause of action contending that Plaintiffs cannot establish

9    "outrageous" and "extreme conduct."  (ECF No. 61-1 at 25.)  Defendants also contend that

10   Plaintiffs' negligence infliction of emotional distress ("NIED") claim fails as a matter of law and

11   furthermore is not properly before this Court.[11]  (ECF No. 61-1 at 26.)  Thus, Defendants ask the

12   Court to strike this claim.  (ECF No. 61-1 at 27.)

13          *1. Intentional Infliction of Emotional Distress*

14          A claim for IIED requires "(i) outrageous conduct by defendant, (ii) an intention by

15   defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii)

16   severe emotional distress, and (iv) an actual and proximate causal link between the tortious

17   conduct and the emotional distress." *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988).

18   Conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a

19   civilized community." *Id.*  Further, "'[w]hether treated as an element of the prima facie case or as

20   a matter of defense, it must also appear that the defendants' conduct was unprivileged.'" *Ross v.*

21   *Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745 (2002) (quoting *Cervantez v. J. C.*

22   *Penney Co.*, 24 Cal. 3d 579, 593 (1979)).

23          "In the context of debt collection, courts have recognized that the attempted collection of a

24   debt by its very nature often causes the debtor to suffer emotional distress." *Id.* (citing *Bundren v.*

25   *Superior Court*, 145 Cal. App. 3d 784, 789 (1983)).  "'Frequently, the creditor intentionally seeks

26   to create concern and worry in the mind of the debtor in order to induce payment.'" *Id.* (quoting

27   ───────────────

    [11]     As discussed in Sections III(I) and III(J), Defendants also contend that Plaintiffs' Ninth and Tenth Causes of

28   Action were filed in contravention to this Court's previous order dismissing Plaintiffs' Second Amended Complaint.
    Accordingly, Defendants have requested the Court strike all three causes of action.  (ECF No. 61-1 at 27.)

1    *Bundren*, 145 Cal. App. 3d at 789).  "Such conduct is only outrageous if it goes beyond 'all

2    reasonable bounds of decency.'"  *Id.* (quoting *Bundren*, 145 Cal. App. 3d at 789).  In *Bundren*,

3    the First District Court of Appeals enumerated examples where a creditor's conduct would be

4    considered extreme:

5              Likewise, liability has been found in instances in which the
              collector has been aware of a debtor's bad heart *( Personal Finance*
6              *Co. of Atlanta v. Loggins* (1935) 50 Ga.App. 562 [179 S.E. 162]);
              physical hypertension ( *Clark v. Associated Retail Credit Men*
7              (D.C. Cir. 1939) 105 F.2d 62); advanced pregnancy ( *Digsby v.*
              *Carroll Baking Co.* (1948) 76 Ga.App. 656 [47 S.E.2d 203]; *Kirby*
8              *v. Jules Chain Stores Corporation* (1936) 210 N.C. 808 [188 S.E.
              625]); heart condition ( *Interstate Life & Accident Co. v. Brewer*
9              (1937) 56 Ga.App. 599 [193 S.E. 458]); blindness (*Turman v.*
              *Central  Billing Bur., Inc.* (1977) 279 Ore. 443 [568 P.2d 1382]);
10             epilepsy (*Watson v. Franklin Finance* (Mo.App. 1976) 540 S.W.2d
              186); or nervous disorder ( Pacific Mutual Life Ins. Co. of
11             *California v. Tetirick* (1938) 185 Okla. 37 [89 P.2d 774].)

12   *Bundren*, 145 Cal. App. 3d at 790–91.  "The act of foreclosing on a home (absent other

13   circumstances) is not the kind of extreme conduct that supports an intentional infliction of

14   emotional distress claim."  *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D.

15   Cal. 2010); *see also Mehta v. Wells Fargo Bank, N.A.*, No. 10–CV–944 JLS (AJB), 2010 WL

16   3385020, at *16 (S.D. Cal. Aug. 26, 2010) ("The fact that one of Defendant Wells Fargo's

17   employees allegedly stated that the sale would not occur but the house was sold anyway is not

18   outrageous as that word is used in this context.").  Plaintiffs have failed to allege facts that would

19   support outrageous conduct by Defendants.  Due to Plaintiffs' repeated opportunities to fix this

20   defect and their failure to rectify the deficiency, the Court DISMISSES Plaintiffs' claim for

21   intentional infliction of emotional distress WITH PREJUDICE.

22            *2. Negligent Infliction of Emotional Distress*

23            As to Plaintiffs' NIED claim, Defendants are correct in asserting that this claim is not

24   properly before the Court.  This Court's previous order dismissed Plaintiffs' Second Amended

25   Complaint and allowed Plaintiffs "to file an amended complaint amending the dismissed claims."

26   (ECF No. 53 at 20.)  Plaintiffs' Second Amended Complaint did not contain a negligence claim.

27   Accordingly, the Court did not give Plaintiffs leave to file a negligence claim.  *See* Fed. R. Civ. P.

28   15(a)(2) (stating that where a party may not amend as a matter of course it "may amend its

1    pleading only with the opposing party's written consent or the court's leave.").  Plaintiffs did not

2    request leave from this Court to add new causes of action.  Accordingly, this cause of action as

3    well as Plaintiffs' negligence and unfair competition claim were added in contravention of this

4    Court's previous order.  Defendants ask the Court to strike this claim.  However, because the

5    Court finds that this claim fails as plead and therefore DISMISSES it, Defendants' motion to

6    strike is rendered MOOT.

7            Negligent infliction of emotional distress is not an independent tort, but the tort of

8    negligence, involving the usual duty and causation issues.  *See Delfino v. Agilent Technologies,*

9    *Inc.*, 145 Cal. App. 4th 790, 795 n.4 (2006) ("[W]e acknowledge both that a purported claim for

10   negligent infliction is in actuality not a tort separate and apart from the tort of negligence.");

11   *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (holding that in California

12   "there is no duty to avoid negligently causing emotional distress to another, and that damages for

13   emotional distress are recoverable only if the defendant has breached some other duty to the

14   plaintiff").  "[A]s a general rule, a financial institution owes no duty of care to a borrower when

15   the institution's involvement in the loan transaction does not exceed the scope of its conventional

16   role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d

17   1089, 1096 (1991).  "'Liability to a borrower for negligence arises only when the lender 'actively

18   participates' in the financed enterprise 'beyond the domain of the usual money lender.'"  *Id.*

19   (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)).  Plaintiffs fail to allege any facts

20   that would support the existence of a duty, let alone any case law in support of their claim.

21   Accordingly, this cause of action is also DISMISSED WITH PREJUDICE.

22           I.       Count Nine: Negligence

23           As referenced in the above section, this cause of action was filed in contravention of this

24   Court's order dismissing Plaintiffs' Second Amended Complaint.  However, the same deficiency

25   that bars Plaintiffs' NIED claim plagues Plaintiffs' negligence claim.  Plaintiffs cannot allege

26   facts that support their contention that Defendants owed Plaintiffs a duty.  In their opposition,

27   Plaintiffs merely state that:

28                Civil  Code  section  1714(a)  provides  in  part:  "Everyone  is

1

2

3

> responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

4

(ECF No. 63 at 17.)  As this Court has repeatedly indicated, the general rule is that a financial

5

institution owes no duty of care to a borrower.  *Nymark*, 231 Cal. App. 3d at 1096.  Plaintiffs

6

have failed to allege facts that would support this cause of action.  Thus, Plaintiffs' negligence

7

claim is DISMISSED WITH PREJUDICE.

8

        J.      Count Ten: Unfair Competition

9

        Again, Plaintiffs' Unfair Competition Law ("UCL"), Business and Professions Code

10

sections 17200, et seq., claim is improperly before this Court because it was filed in contravention

11

of this Court's order.  However, because the Court GRANTS Defendants' motion to dismiss this

12

cause of action, Defendants' motion to strike is rendered MOOT.

13

        The statute states in relevant part that it concerns "any unlawful, unfair or fraudulent

14

business act or practice and unfair, deceptive, untrue or misleading advertising…"  Cal. Bus. &

15

Profs. Code § 17200 ("Section 17200").  While Plaintiffs' complaint repeatedly alleges

16

"deceptive business practices," the crux of their argument is that Defendants have engaged in

17

unlawful, unfair, and fraudulent business acts in violation of Section 17200.  Defendants assert

18

that Plaintiffs' allegations are factually deficient.

19

        The purpose of California's unfair competition law ("UCL") is to protect consumers as

20

well as competitors by promoting fair competition for goods and services in commercial markets.

21

*Barquis v. Merch. Collection Ass'n*, 7 Cal. 3d 94, 110 (1972).  To that end, the scope of the UCL

22

is quite broad.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  A plaintiff need only meet one

23

of three criteria to state a claim for unfair competition.  *South Bay Chevrolet v. Gen. Motors*

24

*Accept. Corp.*, 72 Cal. App. 4th 861, 878 (1999).  First, with respect to unlawful acts, the

25

California Supreme Court has held that Section 17200 "'borrows' violations of other laws and

26

treats these violations, when committed pursuant to business activity, as unlawful practices

27

independently actionable under 17200."  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383

28

(1992).  Next, a business practice may be deemed unfair, and thus, a violation of Section 17200,

18

1    even if it is not otherwise illegal.  *Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163,

2    180 (1999).  Unfair business practices include violations of established public policy, and

3    practices that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

4    consumers." *Cmty. Asst. Recovery, Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886, 894 (2001).

5    Finally, a business practice may be deemed fraudulent in the context of Section 17200 if the

6    public is likely to be deceived.  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

7                    Plaintiffs' TAC contains numerous legal conclusions in support of this claim:

8
                  194. Wells Fargo's acts and practices alleged herein constitute
9                 unfair business practices, including, without limitation steering
                  Plaintiffs into loans Wells Fargo knew Plaintiffs could not ever
                  repay and breaching the fiduciary duty owed to Plaintiffs in order to
10                increase its own profits by closing the mortgage transaction.

11                195. Wells Fargo's acts and practices alleged herein constitute
                  fraudulent business practices, including, without limitation, the
12                following practices:

13                196. Wells Fargo's made misrepresentations and omissions of
                  material facts that induced Plaintiffs to enter TPP contracts in order
14                to obtain a permanent modification;

15                197. Wells Fargo made misrepresentations and omissions of
                  material fact regarding the status of Plaintiffs' loan modifications
16                and loan payments;

17                198. Defendants misrepresentations and omissions are likely to
                  deceive the reasonable consumer, and did in fact deceive Plaintiffs;
18
                  199. Defendant's misrepresentations are objectively material to the
19                reasonable   consumer,   and   therefore   reliance   upon   such
                  representations may be presumed as a matter of law, and Plaintiffs
20                did in fact believe the misrepresentations were reasonable and did
                  in fact rely upon them
21

22   (ECF No. 59 at ¶¶ 194–99.)  Plaintiffs' instant allegations sound in fraud.  However, Plaintiffs fail

23   to supply any facts that would meet the heightened pleading standard required of fraud claims.

24   *Ebeid ex rel. United States*, 616 F.3d at 998 (quoting *Vess*, 317 F.3d at 1106) (holding fraud

25   claims require a plaintiff to "'state with particularity the circumstances constituting fraud or

26   mistake,' including 'the who, what, when, where, and how of the misconduct charged.'");

27   *Tarmann*, 2 Cal. App. 4th at 157 (holding that standard is further heightened when a party pleads

28   fraud against a corporation, since allegations of fraud against a corporation generally must

1   include "the names of the persons who made the allegedly fraudulent representations, their

2   authority to speak, to whom they spoke, what they said or wrote, and when it was said or

3   written").  As such, Plaintiffs' UCL claim is hereby DISMISSED WITH PREJUDICE.

4          **IV.    CONCLUSION**

5          For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Third Amended

6   Complaint is hereby GRANTED.

7   Dated: September 30, 2014

8

9   _____

10          Troy L. Nunley
            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28